WADE v. TOWN OF AYDEN

[125 N.C. App. 650 (1997)]

———

THOMAS H. WADE; SANDRA WADE; WILLIAM S. HOLLAND; BARBARA B. HOLLAND; ELIZABETH A. WHITE; CHARLES F. WHITE; REUBEN HILL; WANDA HILL; HAL TILL; BRENDA TILL; GLADYS PIERCE; JULIAN PIERCE; JOEY PIERCE; B.P. MOSELEY; ANN MOSELEY; ADDIE ALLEGOOD; DOROTHY DOLLBERG; MARY ALICE DAVENPORT; LOU ELLEN SANDERS; RONALD J. KWIATKOWSKI; MARY V. KWIATKOWSKI; DAVID WATTS; EDNA HOOKS; IMELDA A. STANG; BROWNIE EDWARDS; JEFFREY FARRELL; SHERI SMITH; JANIECE JOYNER; JAMES R. ROBINSON; JACKIE ROBINSON; W.E. PHILLIPS; LENA PHILLIPS; CLIFFORD A. STANG; ROBERT SCOTT; CHARLIE B. DAVENPORT; MARJORIE HARRINGTON; STEPHEN L. JOYNER; JACK CRAFT; STEVE H. BOSWELL; JACKIE H. BOSWELL; JOE SMITH; WYNN NOBLES; JUANITA NOBLES; WANDA L. FAISON; SUE TAYLOR; O.W. BABCOCK, JR.; RUTH BABCOCK; LOUIS W. THIEL; HAZEL THIEL; WILLIAM STATON, III; SPENCER E. GAY; MEREDITH ELLIS; JANICE ELLIS; JUDY EDWARDS, PETITIONERS v. TOWN OF AYDEN, A BODY POLITIC; AND MARVIN BALDREE, MAYOR; J.J. BROWN, MAYOR PRO-TEM; STEVE TRIPP, DAVID WEBB, DON WILSON AND CARL SPEIGHT, COMMISSIONERS; AND ROBERT D. PARROTT, TRUSTEE FOR HART HEIRS, RESPONDENTS

No. COA96-660

(Filed 18 March 1997)

**Zoning § 67 (NCI4th)— board of commissioners—conditional use permit—sketches did not meet ordinance requirement**

A town's board of commissioners erred in granting a final conditional use permit to a developer where the town's zoning ordinance required that "complete final plans" be submitted for

## WADE v. TOWN OF AYDEN

[125 N.C. App. 650 (1997)]

final approval of a conditional use permit and the developer submitted only sketches for a proposed development.

**Am Jur 2d, Zoning and Planning §§ 986-1007.**

Judge WALKER concurring.

Appeal by petitioners from order filed 29 February 1996 in Pitt County Superior Court by Judge James E. Ragan, III. Heard in the Court of Appeals 19 February 1997.

*Everett, Warren, Harper & Swindell, by Edward J. Harper, II and Jonathan E. Jones, for petitioner-appellants.*

*McLawhorn & Associates, by Charles L. McLawhorn, Jr., for respondent-appellee Parrott.*

*Lewis & Associates, by Christopher P. Edwards, for respondent-appellees, no brief filed.*

GREENE, Judge.

Petitioners, a group of property owners in the Town of Ayden, appeal the superior court order affirming the Town of Ayden Board of Commissioners' (Board) (collectively respondents) decision to issue a conditional use permit to Robert Parrott (Parrott).

In January 1995, Parrott filed an application for "Final Approval" of a conditional use permit to construct a "multifamily development consisting of approximately 136 multifamily [sic] units" in the Town of Ayden (Town). This record reveals that the application included a statement (1) of how the development would maintain the public health, safety and general welfare; (2) that the development complied with all required regulations and standards; (3) that the development would maintain or enhance the value of "contiguous" property and was a public necessity; and (4) that the development conformed with the Town's general plan for land use. A study of the affect the development would have on traffic was also submitted with the application. Although there is some indication in the record that the application also included a "sketch plan and maps of the proposed project," this record does not include those items.

The Zoning Ordinance of the Town of Ayden (Ordinance) provides that an applicant for a conditional use permit may either request preliminary approval or may simply submit an application for final approval of a conditional use permit without first obtaining

preliminary approval. Ayden, N.C., Zoning Ordinance 93-94-22, § 155-31(C) (May 9, 1994) (hereinafter Ordinance). Parrott did not apply for preliminary approval before submitting his application for final approval. To apply for preliminary approval, an applicant must submit to the Board "preliminary plans." "The purpose of the preliminary approval phase is to allow the developer to submit plans which do not require the level of detail and expense as final plans." Ordinance § 155-31(C)(1). Preliminary approval is binding upon the Board "as long as the subsequent final plans comply with the approved proposal and the provisions of [the] Ordinance." Ordinance § 155-31(C)(1). Final approval of a conditional use permit must be "based upon complete final plans as developed by the applicant." Ordinance § 155-31(C)(2). Applications for both preliminary approval and final approval

> shall include all of the requirements pertaining to it in this section and without such information cannot be processed for consideration by the Planning Board and Board of Commissioners. Applications shall include site plans and shall be prepared to provide a full and accurate description of the proposed use, including its location, appearance and operational characteristics.

Ordinance § 155-31(B).

The Board held hearings on 8 May 1995 and 12 June 1995 to consider Parrott's application. Mr. Thomas Harwell (Harwell), testifying as an expert in engineering, testified the plans were not complete or final in many aspects, including the lack of any plans for "water, sewer, street development, or drainage or erosion control or any other drainage control." Richard Miller, a licensed general contractor who was retained by Parrott for this development, testified that the application was not "final and complete," but from his experience, to get a conditional use permit only a "sketch plan" is prepared to delineate the character and scope of the project and only after the permit is issued will the "professional staff or consultants . . . take care of all the technical engineering and meet all the state [and] local departmental requirements," as well as those conditions that the Board may require upon granting the permit.

After both parties presented their evidence, petitioners argued that the application should be dismissed because there was uncontradicted evidence that "complete final plans" had not been submitted as the Ordinance requires. The Board granted the application.

The issue is whether respondent submitted "complete final plans" upon which the Board could base its decision to issue a final conditional use permit.

Our review of a decision on an application for a conditional use permit made by a town board requires that we insure that the "procedures specified by law in both statute and ordinance are followed." *Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980).

Petitioners argue that the Board failed to comply with the Ordinance requirement that a conditional use permit be granted or denied based upon "complete final plans." Petitioners assert that the uncontradicted evidence is that the plans were not complete or final and therefore the Board "lacked authority to consider, much 'less approve, [the] conditional use permit." We agree.

Where the language of an ordinance is clear and unambiguous, there is no room for judicial construction and the courts are required to give the language its plain and definite meaning. *Utilities Comm'n v. Edmisten, Atty. General*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977). It is presumed that the words used in the ordinance convey "their natural and ordinary meaning." *Miller Brewing Co. v. Morgan Mechanical Contractors, Inc.*, 90 N.C. App. 310, 315, 368 S.E.2d 438, 441, *disc. rev. denied*, 323 N.C. 174, 373 S.E.2d 110 (1988). To determine the common and ordinary meaning courts may resort to dictionaries for assistance. *Id.* The term "complete" means "[h]aving all necessary or normal parts, components, or steps; entire." *The American Heritage College Dictionary* 285 (3d ed. 1993). To be "final" is to be "last" or "[occur] at the end." *Id.* at 510. When something is final it is "[n]ot to be changed or reconsidered" and is "unalterable." *Id.*

In this case the Ordinance is clear and unambiguous in requiring "complete final plans" as a prerequisite for final approval of a conditional use permit. This requirement allows the Board as well as the public (who are entitled pursuant to section 155-31(B) of the Ordinance to notice and an opportunity to be heard on the issuance of the application) to intelligently respond to the application and determine whether the development is consistent with the other requirements of the Ordinance. The record reveals that Parrott submitted only sketches of the proposed development and all the testimony is that the plans were not complete or final. Thus the Board was without authority to consider final approval of the conditional use permit request. *See Signorelli v. Town of Highlands*, 93 N.C.

App. 704, 707, 379 S.E.2d 55, 58 (1989) (applicant has burden of complying with "all ordinance requirements and conditions").

We are not unaware of the expense that this requirement places upon the applicant. To avoid some of the uncertainty in this process, however, the Ordinance provides the applicant with the option of seeking preliminary approval of the conditional use permit at which time the plans are not required to have the "level of detail" required of the final plans. If the Board does not grant preliminary approval the applicant will be spared the expense of preparing detailed and final plans. If the Board does grant preliminary approval, that approval is "binding upon the Board . . . as long as the subsequent final plans comply with the [preliminarily] approved proposal."

Reversed.

Judge McGEE concurs.

Judge WALKER concurs with separate opinion.

Judge WALKER concurring.

I am unable to conclude that the applicant Parrott has complied with Section 155-31(C)(2) of the Ordinance; i.e., no site plan is included in the record. However, I do not construe the Ordinance to require the applicant to submit detailed architectural and engineering drawings. Instead, the plans and required conditions must be sufficiently complete to allow for thorough review and enable the Town to insure compliance with the conditional use permit once issued.